IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY K. WILSON,<br>[DOB: 01/19/1965]<br><br>Defendant. | Case No. 17-00024-01-CR-W-HFS |

PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, Stacey Perkins Rock, Assistant United States Attorney, and James Curt Bohling, Assistant United States Attorney and the defendant, Jeffrey K. Wilson ("the defendant"), represented by Nathan Garrett and Kathleen Fisher of Graves Garrett LLC.

The defendant understands and agrees that this plea agreement is only between Jeffrey K. Wilson and the United States Attorney's Office for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 5 of the indictment charging defendant with violating 18 U.S.C. § 1031, that is, major program fraud, in that on or about July 31, 2013, and as part of the defendant's scheme to defraud

the United States and to obtain money by means of false and fraudulent pretenses, representations and promises, the defendant falsely and fraudulently represented that Patriot Company, Inc. (PCI) was eligible for contracts set aside by the United States Department of Veteran Affairs (VA) for service disabled veteran owned small businesses (SDVOSBs), and PCI, which the defendant controlled, thereby procured a contract for work in Iowa City, Iowa, valued at approximately $2,527,709.00, which contract PCI was not eligible to receive because, as the defendant knew, PCI was not a legitimate SDVOSB because the service disabled veteran (SDV) was not managing or controlling the day-to-day operations of PCI. By entering into this plea agreement, the defendant admits he knowingly committed this offense, and admits he is guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which defendant is pleading guilty are as follows:

Jeffrey K. Wilson was not a veteran. Jeffrey K. Wilson was the 100% owner and president of Corporation A, a construction company formed in 2000 and located in the Western District of Missouri. PCI was formed in 2005 in the state of Missouri as a SDVOSB with a SDV as the nominal owner. Neither PCI's long-term decision making nor its day-to-day operations were managed or controlled by the SDV. In fact, Jeffrey K. Wilson, a minority PCI shareholder, managed and controlled PCI's day-to-day operations and long-term decision making between May 2005 and January 2014. Throughout the period that PCI operated, the SDV maintained full-time employment with the government, preventing him from managing or operating PCI as required.

Jeffrey K. Wilson used PCI in a scheme to obtain at least $13,819,522.00 in approximately 20 federally funded contracts set aside for SDVOSBs or veteran owned small businesses (VOSBs) for work in approximately nine states. The Veterans Entrepreneurship and Small Business Development Act of 1999 established an annual government-wide goal of awarding contracts to at least three percent of the total value of all federal prime and subcontract awards for small businesses owned and controlled by SDVs. One of the requirements to obtain government contracts set aside for SDVOSBs was that the SDV must control the day-to-day management, daily operations, and long-term decision making of the SDVOSB. The United States General Services Administration (GSA) housed database systems located outside the state of Missouri where contractors entered and certified details of their companies. Government agency contracting offices rely on this information and these certifications to award set-aside contracts. Between 2005 and 2012, Jeffrey K. Wilson made approximately five certifications in the GSA-housed

2

databases that PCI was eligible for SDVOSB and VOSB set-aside contracts even though he knew it was not. Between 2010 and 2013, Jeffrey K. Wilson signed more than 10 government set-aside contracts in which he falsely represented that PCI was eligible for SDVOSB and VOSB set-aside contracts when he knew it was not.

In July 2011, Jeffrey K. Wilson received an email from the VA raising concerns that PCI was not a legitimate SDVOSB. In response, Jeffrey K. Wilson and the SDV sent a letter to VA stating that as a corporate officer and owner of PCI, Jeffrey K. Wilson had authority to sign a recent contract. In September 2012, VA requested documentation from PCI to determine eligibility for the set-aside contracts. That same month, in September 2012, PCI's recertification as an SDVOSB was denied. The VA advised Jeffrey K. Wilson that because the SDV was not working full-time for PCI during normal business hours, PCI did not meet SDVOSB requirements. Notwithstanding this, PCI appealed the decision and was recertified by claiming the SDV was devoted full-time to managing PCI, even though the SDV maintained his full-time employment as a government employee and did not actually manage or control PCI's day-to-day operations.

On or about July 31, 2013, and as part of the defendant's scheme to defraud the United States and to obtain money by means of false and fraudulent pretenses, representations and promises, the VA awarded PCI a contract for work in Iowa City, Iowa, based on a bid prepared by Jeffrey K. Wilson. After preparing the bid, Jeffrey K. Wilson directed the SDV to sign the bid, which falsely and fraudulently represented that PCI was a legitimate SDVOSB, allowing PCI to procure the contract, valued at approximately $2,527,709.00. Jeffrey K. Wilson knew that PCI was not eligible to receive this contract because PCI was not a legitimate SDVOSB given that the SDV owner was not managing and controlling PCI. In September 2013, VA conducted an unannounced site visit of PCI. The site inspector discovered that the SDV was working 40 miles away at his full-time job as a federal employee at Leavenworth, Kansas. In December 2013, VA de-certified PCI as a SDVOSB.

As a result of the scheme, Jeffrey K. Wilson, through PCI, unlawfully obtained the following federal set-aside contracts, thereby depriving other SDVOSBs and VOSBs that bid on these contracts from obtaining them:

|    | Agency | Contract No.     | Award          | Award Date | City, State       |
|----|--------|------------------|----------------|------------|-------------------|
| 1  | VA     | VA263-RA-0650    | $264,712[1]    | 9/24/2009  | Ft. Meade, SD     |
| 2  | Army   | W91151-10-C-0177 | $99,928        | 9/07/2010  | Fort Hood, TX     |
| 3  | VA     | VA263-C-1074     | $149,104[2]    | 9/23/2010  | Omaha, NE         |
| 4  | VA     | VA256-C-1235     | $93,100        | 4/12/2011  | Muskogee, OK      |
| 5  | VA     | VA256-C-1237     | $111,269       | 4/12/2011  | Muskogee, OK      |
| 6  | VA     | VA251-C-1074     | $1,628,248[3]  | 6/16/2011  | Battle Creek, MI  |
| 7  | VA     | VA256-C-1344     | $4,383,129[4]  | 6/22/2011  | Oklahoma City, OK |
| 8  | VA     | VA255-C-2136     | $180,972       | 9/14/2011  | Kansas City, MO   |
| 9  | VA     | VA255-C-2229     | $1,008,119     | 9/14/2011  | Kansas City, MO   |
| 10 | VA     | VA251-C-1103     | $153,440       | 12/15/2011 | Ft. Wayne, IN     |
| 11 | VA     | VA249-12-C-0089  | $689,881       | 1/24/2012  | Memphis, TN       |
| 12 | VA     | VA263-12-C-0172  | $281,821[5]    | 6/28/2012  | Des Moines, IA    |
| 13 | VA     | VA786A-12-C-0033 | $25,439        | 8/1/2012   | Danville, IL      |
| 14 | VA     | VA263-13-C-0129  | $245,095[6]    | 5/29/2013  | Des Moines, IA    |
| 15 | VA     | VA263-13-C-0155  | $775,069[7]    | 6/26/2013  | Fargo, ND         |
| 16 | VA     | VA263-13-C-0177  | $415,850[8]    | 6/27/2013  | Omaha, NE         |

---

[1] Original contract award: $238,341; four modifications resulted in chart award amount.
[2] Original contract award: $143,666; two modifications resulted in chart award amount.
[3] Original contract award: $1,324,000; four modifications resulted in chart award amount.
[4] Original contract award: $4,295,500; one modification resulted in chart award amount.
[5] Original contract award: $272,226; four modifications resulted in chart award amount.
[6] Original contract award: $185,137; seven modifications resulted in chart award amount.
[7] Original contract award: $770,651; three modifications resulted in chart award amount.
[8] Original contract award: $375,818; two modifications resulted in chart award amount.

| 17 | VA | VA263-13-C-0208 | $78,735 | 7/24/2013 | Omaha, NE |
| 18 | VA | VA263-13-C-0210 | $321,876[9] | 7/29/2013 | Grand Island, NE |
| 19 | VA | VA263-13-C-0216 | $2,809,378[10] | 7/31/2013 | Iowa City, IA |
| 20 | VA | VA263-13-C-0281 | $104,357 | 9/30/2013 | Iowa City, IA |
| | | **Total:** | **$13,819,522** | | |

None of the 20 federal set-aside contracts would have been awarded to PCI absent false representations that PCI was managed and controlled by the SDV.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining defendant's guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that in calculating the offense level for the charge to which defendant is pleading guilty, the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2), or as part of the "offense of conviction" pursuant to U.S.S.G. § 1B1.2.

5. **Statutory Penalties.** The defendant understands that upon defendant's plea of guilty to Count Five of the indictment charging a violation of 18 U.S.C. § 1031, that is, major program fraud, the minimum penalty the Court may impose is probation, while maximum penalty the Court may impose is not more than 10 years of imprisonment, a $10,000,000 fine, three years of

---

[9] Original contract award: $312,000; one modification resulted in chart award amount.
[10] Original contract award: $2,527,709; eight modifications resulted in chart award amount.

supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

**6. <u>Sentencing Procedures</u>.** The defendant acknowledges, understands and agrees to the following:

   a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows: no fine, no criminal forfeiture, a mandatory special assessment of $100.00, and a term of imprisonment that cannot exceed 18 months. The defendant may seek a sentence below the guidelines, including a sentence of probation, and the government may oppose defendant's request. The parties agree that there are no identifiable victims so restitution will not be imposed, however, defendant must consent to forfeiture in the civil forfeiture proceedings described in subparagraph f below. If the court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the court rejects this plea agreement, it must, on the record and in open court, inform the parties that the court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

   b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

   d. if the defendant commits a supervised release violation, the Court may revoke supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period

6

Case 4:17-cr-00024-HFS   Document 28   Filed 02/02/18   Page 6 of 16

of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. any sentence of imprisonment imposed by the Court will not allow for parole;

f. The defendant agrees that the United States has instituted civil forfeiture proceedings against forfeitable assets in which the defendant has an interest as agreed in the civil forfeiture stipulation resolving those civil proceedings. The defendant has entered a stipulated agreement with the United States in the matter of *United States of America v. $113,000.00*, *et al*, Case No. 15-00847-CV-W-GAF and *United States of America v. Real Property Located at 155 Street of Dreams*, *et al*, Case No. 15-00602-CV-W-GAF, pursuant to which the United States agrees to dismiss *United States of America v. Real Property Located at 155 Street of Dreams*, *et al*, Case No. 15-00602-CV-W-GAF. The defendant's stipulated agreement with the United States resolves all the defendant's claims in both of the above-identified civil cases;

g. The defendant agrees to take all necessary steps to comply with the civil forfeiture matters set forth herein before defendant's sentencing.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring charges against any other individual or entity for any federal criminal offense related to the PCI scheme. The Government further agrees not to bring any additional charges against defendant for any federal criminal offenses related to the PCI scheme for which it has venue and which arose out of the defendant's conduct described above. Additionally, the Government agrees to dismiss Counts One through Four and Six through Eight at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the Acting United States Attorney for the Western District of Missouri has no knowledge.

7

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives defendant's right to challenge the initiation of the dismissed or additional charges if defendant breaches this agreement. The defendant expressly waives the right to assert a statute of limitations defense if the dismissed or additional charges are initiated following defendant's breach of this agreement and had not otherwise expired prior to the date of the Indictment. The defendant further understands and agrees that if the Government elects to file additional charges against defendant following a breach of this plea agreement, defendant will not be allowed to withdraw defendant's guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which defendant has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw defendant's plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. However, if the court accepts this Rule 11(c)(1)(C) plea agreement, the Court is bound to impose the sentence agreed to by the parties, as set forth in paragraph 6 above;

    b. The applicable Guidelines Manual is the one that took effect on November 1, 2016;

    c. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1(a)(2), which provides for a base offense level of 6;

    d. The parties reserve the right to argue at sentencing the correct measure of loss pursuant to U.S.S.G. § 2B1.1(b)(1), and to appeal the court's decision on this issue, notwithstanding anything that might indicate otherwise in this plea agreement;

    e. The defendant was an organizer, leader, manager or supervisor which, pursuant U.S.S.G. § 3B1.1(c), increases the offense level by 2;

    f. The parties may argue their respective postions regarding the applicability of any other sentencing enhancements;

    g. The defendant has admitted guilt and clearly accepted responsibility for defendant's actions. Consequently, defendant is entitled to a two or three-level reduction pursuant to § 3E1.1(a) of the Sentencing Guidelines;

  h. The defendant's criminal history category is Category 1;

  i. The defendant understands that the estimated Guideline calculations set forth in the subsections of this paragraph do <u>not</u> bind the Court or the United States Probation Office with respect to the Court's determination of the applicable advisory Guidelines;

  j. The defendant and the United States confirm that the agreed sentence set forth in paragraph 6 above is both reasonable and authorized by law;

  k. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

  l. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that defendant will make during the plea colloquy, support the imposition of the agreed-upon sentence and Guidelines calculations contained in this agreement.

  **11.** **<u>Effect of Non-Agreement on Guidelines Applications</u>.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

  **12.** **<u>Change in Guidelines Prior to Sentencing</u>.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the

10

Case 4:17-cr-00024-HFS   Document 28   Filed 02/02/18   Page 10 of 16

plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court does not impose the sentence agreed to by parties in this agreement; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against defendant;

    e. the right to compel or subpoena witnesses to appear on defendant's behalf; and

  f. the right to remain silent at trial, in which case defendant's silence may not be used against defendant.

The defendant understands that by pleading guilty, defendant waives or gives up those rights and that there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, defendant's answers may later be used against defendant in a prosecution for perjury or making a false statement. The defendant also understands defendant has pleaded guilty to a felony offense and, as a result, will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

**15.** **Waiver of Appellate and Post-Conviction Rights.**

The defendant expressly waives any right to appeal defendant's sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; (3) an illegal sentence; or (4) the court improperly calculated loss for guideline calculation purposes. An "illegal sentence" means a sentence imposed in excess of the statutory maximum. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal defendant's sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16.** **Financial Obligations.**

By entering into this plea agreement, the defendant understands and agrees to the following financial obligations:

a. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to collect any fine or unpaid Special Assessment.

b. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of defendant's fulfillment of this obligation at the time of sentencing.

c. The defendant certifies that defendant has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that defendant will make no such transfers in the future.

17. **<u>Waiver of FOIA Request</u>**. The defendant waives all rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **<u>Waiver of Claim for Attorney's Fees</u>**. The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **<u>Defendant's Breach of Plea Agreement</u>**. If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally

13

misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw defendant's plea of guilty.

The defendant also understands and agrees that in the event defendant violates this plea agreement, all statements made by defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against defendant in any and all criminal proceedings. The defendant waives any rights that defendant might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by defendant subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that defendant is satisfied with the assistance of counsel, and that counsel has fully advised defendant of defendant's rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, defendant's attorneys or any other party to induce defendant to plead guilty.

**21. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties,

14

and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Timothy A. Garrison
United States Attorney

Dated: 1/31/2018          *s/ Stacey Perkins Rock*
                          Stacey Perkins Rock
                          Assistant United States Attorney

I have consulted with my attorneys and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorneys and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorneys. I understand this plea agreement and I voluntarily agree to it.

Dated: 1/31/2018          *s/ Jeffrey K. Wilson*
                          Jeffrey K. Wilson
                          Defendant

We are defendant Jeffrey K. Wilson's attorneys. We have fully explained to defendant the rights defendant has with respect to the offenses charged in the indictment. Further, we have reviewed with defendant the provisions of the Sentencing Guidelines which might apply in this case. We have carefully reviewed every part of this plea agreement with defendant. To our

15

knowledge, Jeffrey K. Wilson's decision to enter into this plea agreement is an informed and voluntary one.

Dated: _____    _____
                                  Nathan Garrett
                                  Attorney for Defendant


Dated:   1/31/2018                 *s/ Kathleen Fisher*
                                  Kathleen Fisher
                                  Attorney for Defendant

16